633 F.2d 960
 MONONGAHELA POWER COMPANY, a public utility, Petitioner,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents.
Baltimore & Ohio Railroad Company, Intervenor.
 No. 79-1662.
 United States Court of Appeals
Fourth Circuit.
 Argued June 5, 1980.
Decided Oct. 30, 1980.
 
 Troy B. Conner, Jr., Washington, D. C. (Donald J. Balsley, Jr., Conner, Moore & Corber, Washington, D. C., on brief), for petitioner.
 Sidney L. Strickland, Jr., I. C. C., Washington, D. C. (Sanford M. Litvack, Sp. Asst. Atty. Gen., Barry Grossman, Chief, Appellate Section, Antitrust Section, J. Mark Manner, Dept. of Justice; Richard A. Allen, Gen. Counsel, Henri F. Rush, Associate Gen. Counsel, I. C. C., Washington, D. C., on brief), for respondent.
 Nan R. Jacobs, Cleveland, Ohio, for intervenor.
 Before BRYAN, Senior Circuit Judge, and WIDENER and HALL, Circuit Judges.
 ALBERT V. BRYAN, Senior Circuit Judge:
 
 
 1
 Monongahela Power Company (the Company) appeals the dismissal by the Interstate Commerce Commission (ICC) of its complaint, brought under 49 U.S.C. § 11701(b),[1] challenging the lawfulness of demurrage[2] charged by the Baltimore and Ohio Railroad Company (B&O) (an intervenor) on coal cars detained at the Company's Harrison, West Virginia power station during a portion of the harsh winter of 1976-1977.[3] Monongahela Power Company v. The Baltimore and Ohio Railroad Company, I.C.C. No. 36918 (Division 2, Aug. 21, 1979). We affirm.
 
 
 2
 During this period, coal shipped to the Company's Harrison power station by B& O arrived frozen and required thawing prior to unloading. This problem was common to many other railroads and shippers. From late December through mid-March it caused unloading delays of such severity that seventeen affected railroads proposed to the ICC that it authorize them "to waive portions of the arbitrary demurrage charge." The proposal, with certain modifications, was adopted by the Commission. Petition of Railroads Seeking Authorization to Waive Demurrage Charges Caused by Severe Winter Weather, I.C.C. No. 36574 (Division 2, Aug. 3, 1977) ("the proposal" or "No. 36574"). As pertinent here, it stipulated that
 
 
 3
 shippers or receivers will have the option of (1) applying for the claim under the involved proposal, (2) filing a claim under the proposal and in the event no binding settlement is made subsequently seeking relief from alleged unjust and unreasonable demurrage charges under the Commission's regular procedures, or (3) by initially seeking relief from the Commission under its regular procedures.
 
 
 4
 Id. (numerals supplied). The proposal covered the period December 28, 1976 through March 15, 1977.
 
 
 5
 Monongahela embraced the measure. The B&O demurrage charges had run to $1,104,010 initially. Under the Commission's proposal, however, the Company effectuated a settlement with B&O whereby the charges were reduced to $582,510. B&O refunded $521,500, the difference between the original and the adjusted demurrage for the months covered.
 
 
 6
 After receiving the refund from B&O, Monongahela filed its complaint seeking to recover the remainder of the demurrage initially charged at the Harrison station from December 29, 1976 through March 5, 1977. In the alternative, it sought reparation of the penalty portion[4] of the demurrage charged during the same period. The basis of the claim was that the demurrage charges ultimately collected by B&O were unjust and unreasonable. This premise in turn rested on the assertion that the detention of the cars was the result of vis major, and thus not blamable on the Company.
 
 
 7
 ICC Review Board Number 4 dismissed the complaint, finding that "(a)s to shipments to the Harrison power station, the complaint is barred by the prior binding settlement between (the Company and B&O)." Monongahela Power Company v. The Baltimore and Ohio Railroad Company, I.C.C. No. 36918 (Review Board Number 4, Oct. 27, 1978). It reasoned that "since complainant has settled its claim with defendant under the procedures adopted in No. 36574 ... it is estopped from seeking further relief from the Commission." Id. (accent added). The Commission affirmed the Review Board's decision and dismissed the complaint. Monongahela Power Company v. The Baltimore and Ohio Railroad Company, I.C.C. No. 36918 (Division 2, Aug. 21, 1979).
 
 
 8
 The Company then filed with this court a petition for review of the ICC decision, pursuant to 28 U.S.C. §§ 2321 and 2342. The scope of our review is narrow: we must ascertain whether the Commission's interpretation of order No. 36574,[5] the basis for its dismissal of the Company's complaint, is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). We think it is not.
 
 
 9
 This conclusion flows from our examination of the Commission's deliberations in this matter. Review Board Number 4 correctly observed that "(t)he question is not whether blanket relief and subsequent additional reparations are mutually exclusive, per se, but whether the order in No. 36574 prohibits the granting of additional reparations." Plainly No. 36574 was a tender of orderly optional elections available to shippers and carriers. The use of the article "or" explicitly indicates that the shipper could choose only one of the alternatives. The Company could file a claim under the proposal and reach a binding settlement with B&O. It could file a claim under the proposal and then, should it fail to reach a settlement with B&O, seek relief through the Commission's regular procedures. Finally, under the last option, it was free at the very outset to eschew the limitations of the proposal by seeking relief from the Commission under its regular procedures. Although the Company pursued the first option and settled with B&O, it now rejects the consequences of its choice within the framework established by No. 36574.
 
 
 10
 In support of its position, the Company points to Appendix B of No. 36574, which summarizes the terms of the approved proposal. At the end appears the following addendum:
 
 
 11
 NOTE: Shippers and receivers can elect to file a claim under this proposal or a formal docket with the Interstate Commerce Commission. The filing of a claim under this proposal also does not prevent the shipper from seeking additional relief from the Commission. In addition, special-docket applications can be filed by the carrier.
 
 
 12
 The Company argues that the second sentence of the "NOTE" permits it to file a claim under the proposal, to receive satisfaction of that claim, and subsequently to seek additional relief from the Commission. Review Board Number 4 rejected this reading:
 
 
 13
 We believe that ... reliance on this sentence out of context is misplaced. The additional relief contemplated can only refer back to the three options detailed at sheet 3 of the order, specifically to the situation where no binding settlement was reached for certain car-days. The first sentence of the "NOTE" indicates that claims could be made under the special procedures or the Commission's regular procedures, but not both, and the second sentence merely modifies that to account for the contingency of a claim under the special procedures, being denied. There is no inconsistency.
 
 
 14
 An examination of the proposal as a whole supports the Review Board's conclusions. It should be recalled that Appendix B merely summarizes, but does not modify, the terms that are discussed and approved in the body of No. 36574. The Company's construction would mean that the Commission, despite its deliberation and care in framing the proposal, determined to wipe out the whole of it with the second sentence of the "NOTE." We cannot accept such an interpretation.
 
 
 15
 In rejecting the Company's administrative appeal, the Commission adopted as its own the statement of facts, conclusions, and findings of Review Board Number 4:
 
 
 16
 The Review Board held, and we are in agreement, that No. 36574 excludes the possibility of first obtaining relief under its special expedited procedures and then seeking additional reparations through a complaint to the Commission. Complainant elected its remedy, which constituted a binding settlement since relief was accorded to the maximum extent permitted by No. 36574.
 
 
 17
 As our inquiry convinces us that the Commission's conclusions are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), we decline to disturb them.
 
 
 18
 Affirmed.
 
 WIDENER, Circuit Judge, dissenting:
 
 19
 I respectfully dissent because I believe that the plain language of the order involved allows Monongahela Power Company to seek further relief from the Interstate Commerce Commission.
 
 
 20
 The Note to Appendix B of Order 36574 states:
 
 
 21
 Shippers and receivers can elect to file a claim under this proposal or a formal docket with the Interstate Commerce Commission. The filing of a claim under this proposal also does not prevent the shipper from seeking additional relief from the Commission. In addition, special-docket applications can be filed by the carrier. (Italics added.)
 
 
 22
 That Note thus provides in terms that a shipper can seek additional relief from the ICC. Such language clearly controverts the argument that Order No. 36574 establishes an exclusive election of remedies available to shippers like Monongahela.
 
 
 23
 The majority accepts the ICC's conclusion that the above quoted note refers only to the filings under Order No. 36574 in which no settlement is reached. The ICC bases its conclusion of that part of the Order that sets out three methods of procedure available to shippers and receivers: (1) apply for a claim under the Order; (2) apply for a claim under the Order and if no settlement is reached then seek relief under regular procedures from the ICC; or (3) initially seek relief under regular procedures from the ICC.
 
 
 24
 The ICC and the majority, however, do not take any account of the preceding sentence of the order itself, not Appendix B which the majority characterizes as a summary. That sentence states:
 
 
 25
 "However, the approval of the instant proposal (by the ICC in Order No. 36574) does not prejudice ... the filing of additional claims for greater relief by the shippers." (Italics added.)
 
 
 26
 Although Appendix B to the order is in fact a summary, as the majority notes, overturning its plain meaning I think is insufficient for that reason. Monongahela I think was entitled to rely on the order and on its plain construction by the ICC in Appendix B.
 
 
 27
 It is self-evident that giving Monongahela the option of how to proceed initially is not inconsistent with giving it the right to partially settle its claim and then litigate the balance. While the majority construction does make Appendix B and the order inconsistent with each other, a construction I suggest is not favored as well as not reasonable as I have demonstrated above, no reason is given or exists in the record to hunt out a conflict between the order and its Appendix when none exists facially.
 
 
 28
 I would thus vacate the ICC's dismissal of Monongahela's complaint and require further proceedings.
 
 
 
 [1]
 During the course of this dispute Congress revised and recodified the Interstate Commerce Act, enacting it as Subtitle IV of Title 49 of the United States Code. Act of Oct. 17, 1978, Pub.L. No. 95-473, 92 Stat. 1337 (codified at 49 U.S.C. § 10101 et seq.). The Company's complaint proceeded under 49 U.S.C. § 13(1), the relevant language of which was recodified in 49 U.S.C. § 11701. Except as noted, all references will be to the Act as recodified
 
 
 [2]
 Demurrage is the charge imposed upon shippers and receivers for the detention of freight cars beyond the free time for loading and unloading
 
 
 [3]
 The Company also raised the same question regarding its Willow Island, West Virginia power station but does not pursue the issue on appeal
 
 
 [4]
 "Penalty portion," as used here, refers to that portion of the demurrage charge exceeding the sum of per diem, administrative and other expenses incurred by the delivering railroad
 
 
 [5]
 As no challenge to No. 36574 itself was mounted by the Company within the 60-day period mandated by 28 U.S.C. § 2344, we consider only the correctness of the Commission's interpretation of that order